James E. Cecchi
Donald A. Ecklund
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Email: decklund@carellabyrne.com

*Attorneys for Plaintiff*

Jonathan M. Rotter (*pro hac vice* forthcoming)
Ray D. Sulentic (*pro hac vice* forthcoming )
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: info@glancylaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JON TOWER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANSPORTES AÉREOS PORTUGUESES, S.A. d/b/a TAP AIR PORTUGAL,<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jon Tower ("Plaintiff" or "Tower") bought an airline ticket. The Defendant, TAP Air Portugal, an airline, took his money. The airline then cancelled Tower's flight. But it kept his money. Two years later, the airline still has it, though it was contractually obligated to return it, and Tower has made repeated demands for its return.

Of course, Tower was not the only passenger on his flight. There were hundreds of others on that flight, and on each of the thousands of flights that the airline also cancelled. And there is no dispute that the airline should refund all of them. The airline even accrued a liability on its balance sheet for the refunds. But it has kept the money. That is a breach of the airline's contracts with its passengers. Plaintiff, individually and on behalf of all others similarly situated, brings this class action lawsuit regarding Defendant's failure to provide refunds to customers.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a State and Defendant is a citizen or subject of a foreign state.

2. The Court has personal jurisdiction over Defendant because it purposefully availed itself of this forum by engaging in suit-related conduct in this district by conducing substantial business in New Jersey, maintaining its principal U.S. office in New Jersey, entering into contracts with New Jersey residents, maintaining a continuous physical business presence in New Jersey, and providing support for its U.S. flight operations from New Jersey. Plaintiff's contract with TAP was made in the United States through TAP's New Jersey office.

3. Defendant maintains its principal U.S. office at One Riverfront Plaza, 1037 Raymond Boulevard, Newark, New Jersey 07102.

4. Venue is proper in this district under 28 U.S.C. § 1391 because Defendant resides in this district and, as a foreign corporation, Defendant may be sued in any judicial district.

## THE PARTIES

5. Plaintiff, Jonathan Tower, an individual, is and at all relevant times was, a resident of Los Angeles, California.

6. Defendant Transportes Aéreos Portugueses, S.A. d/b/a TAP Air Portugal, ("TAP" or "Defendant") is a Portuguese corporation having its principal place of business in Lisbon, Portugal.

## SUBSTANTIVE ALLEGATIONS

### Background

7. This is a breach of contract case brought on behalf of all persons in the United States who purchased tickets for travel on a TAP flight scheduled to operate from March 1, 2020 through the date of a class certification order, whose flight(s) were cancelled by TAP, and who were not provided a refund.

8. TAP is an international air carrier based in Portugal that offers flights to and from the United States.

9. In the United States, its principal office is located at One Riverfront Plaza 1037 Raymond Blvd., Newark New Jersey, 07102.

10. Within the United States, TAP's flight routes include Boston, Chicago, Miami, New York, Newark, San Francisco, and Washington D.C.

11. All TAP passengers, including Tower, are subject to TAP's Contract of Carriage ("the Contract"), which is incorporated by reference in all ticket purchases. *See* **Exhibit A**.

2

12. The Contract contains a promise and warranty to customers that in the event of a flight cancellation or substantially interrupted flight, customers are entitled to a full cash refund.

13. More specifically, under 10.2.1.1 of the Contract, TAP must refund passengers, including Tower, for flights that have been cancelled. *See* **Exhibit A**. The Contract further provides that if no portion of the reservation has been used, the refund will be equal to "an amount equal to the fare paid plus, subject to applicable law, the taxes, fees and charges paid." *Id*. ¶10.2.1.1. If a portion of the reservation has been used, "the amount of the refund will not be lower than the difference between the fare paid and the fare applicable fare (sic) to the travel between the points for which your Ticket/s has/have been used. Subject to any applicable law, the amount of taxes, fees and charges paid and to be paid will be taken in consideration." *Id*. 10.2.1.2.

14. The Contract's terms include no exceptions or limitations based on the reason for TAP's cancellation. Rather, passengers who bought tickets on the cancelled flight have the option of receiving re-accommodation on the next available flight or a later flight on a date convenient to the passenger, or a prompt refund.

15. Before the pandemic, TAP's usual practice was to refund customers in full for cancelled flights. Since the pandemic, TAP's usual practice has been to just hold onto its customers' money after it cancelled their flights.

**In early 2020, TAP began to cancel flights en masse**

16. Following the global pandemic that began in March 2020,[1] TAP began to cancel flights en masse to protect its profits and/or minimize losses from operating flights that would otherwise be sparsely populated.

---

[1] On March 11, 2020, the World Health Organization officially declared the pandemic.

17. For instance, TAP first announced the cancelation of around 1,000 flights due to the "strong slowdown in demand" on March 5, 2020.[2]

18. Four days later, TAP announced the cancellation of another 3,500 flights during the months of March through May 2020.[3] About two weeks after that, TAP announced it was grounding "a large part of its fleet."[4]

**Despite the mass cancelations and admitted liability for passenger refunds, TAP still refuses to offer refunds**

19. Despite the massive cancellations that TAP made to protect its business interests, many passengers, including Tower, still have not received refunds for flights that were cancelled.

20. At best, and in contravention of the Contract, TAP offered some consumers devalued redeemable credits for future use. For instance, in a March 19, 2020 press release, TAP stated that:

> Customers affected by flight cancellations in this period should go to the website refunds.flytap.com, to get a voucher in the amount paid for the purchase of the ticket, so that they can easily decide where and when they want to travel.[5]

21. Yet TAP's Contract does not let it unilaterally provide vouchers instead of refunds for cancelled flights. And the Company appears to recognize as much because it has accrued a liability on its balance sheet related to "flight tickets issued and unused" which "includes significant amounts relating to flights not completed

---

[2] https://www.tapairportugal.com/en/media/press-releases/Press-Release-836
[3] https://www.tapairportugal.com/en/media/press-releases/Press-Release-837
[4] https://www.tapairportugal.com/en/media/press-releases/Press-Release-841
[5] https://www.tapairportugal.com/en/media/press-releases/Press-Release-841

4

by that date [which] the Group remains responsible for providing the service in the future *or for refunds as (sic) the contractual terms*."[6]

22. Public reporting in early 2022 recounted many consumers' struggles to either reach TAP or receive a refund for fares owed. For instance, one European press outlet reported that[7]:

> TAP customers have been reporting, they are still waiting for full refunds after months of trying to contact the airlines via phone calls, emails and other ways. Some were told they would get a full refund on their lost flight in the next one to three months, but those funds have yet to arrive.

23. The same May 2020 article noted that TAP was the worst among its peers: "to the US Department of Transportation, *the Portuguese flag carrier received the most consumer complaints on the matter*."[8]

24. Indeed, on November 15, 2022, the *New York Times* reported that TAP was fined $1.0 million by the United States Department of Transportation related to TAP's failure to refund consumers' fares.[9]

25. Commenting on the fines, U.S. Department of Transportation Secretary, Pete Buttigieg, added, "*This really shouldn't be happening in the first place*. And we'll continue ratcheting up the penalty side until we're seeing less of this kind of behavior to begin with."

---

[6] *See* TAP's 2021 annual report at 103, available at: https://www.tapairportugal.com/en/about-us/annual-reports

[7] https://www.schengenvisainfo.com/news/portugals-national-airline-hasnt-yet-refunded-passengers-for-cancelled-flights-due-to-covid-19/

[8] *Id*.

[9] https://www.nytimes.com/2022/11/14/business/transportation-department-airline-fines.html

## Named Plaintiff Allegations

26. On January 21, 2020, Tower bought a roundtrip ticket for travel from Boston, Massachusetts to Lisbon, Portugal ("the Ticket"). Tower spent $2,475.94 on the Ticket and it was scheduled to depart out of Boston on September 18, 2020, with a return on October 3 the same year ("the Flight").

27. Tower's purchase constituted the formation of a valid contract between he and TAP. The Contract was offered by TAP and formed when Tower accepted it by buying his ticket.

28. The terms of the Contract require refunds for cancelled flights where, as was the case for Tower, the passenger does not elect to take substitute transportation.

29. About eight months after the Contract between Tower and TAP was formed, Tower received notice that his flight was cancelled.

30. Still, despite TAP's cancellation, and in breach of the Contract, Tower received no refund despite repeated requests for one.

31. Over several months, Tower sought the return of his refund from TAP.

32. As of the date of this Complaint, over two years after TAP cancelled the flight, it has still not refunded Tower.

33. As a result of TAP's breach, Tower was damaged by at least $2,475.94, plus interest.

## **CLASS ACTION ALLEGATIONS**

34. Tower brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons in the United States who purchased tickets for travel on a TAP flight scheduled to operate from March 1, 2020 through the date of a class certification order, whose flight(s) were cancelled by TAP, and who were not provided a refund.

35. Plaintiff reserves the right to modify or refine the Class definitions based on discovery of new information and to accommodate any of the Court's manageability concerns.

36. Excluded from the Class are: (i) any judge presiding over this action; (ii) persons who properly execute and file a timely request for exclusion from the Class; (iii) persons whose claims have been finally adjudicated on the merits or otherwise released.

37. **Numerosity (Rule 23(a)(1))**. The Class is so numerous that joinder of individual members is impracticable. The exact number of Class members, as identified and described, is not known but is at least thousands of customers.

38. **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members, including the following:

   a. Whether Defendant engaged in the activities and practices alleged above;
   b. Whether Defendant's activities and practices alleged above constitute breach of contract;
   c. Whether Defendant has a policy and/or procedure of denying refunds to Class Members for cancelled flights;
   d. Whether Plaintiff and members of the Class sustained damages as a result of Defendant's activities and practices referenced above, and, if so, in what amount;

39. **Typicality (Rule 23(a)(3))**. Plaintiff's claims are typical of the claims of members of the Class because, among other things, Plaintiff and members of the Class sustained similar injuries as a result of Defendant's uniform wrongful conduct and their legal claims all arise from the same events and wrongful conduct by Defendant.

40. **Adequacy (Rule 23(a)(4)).** Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation.

41. **Predominance & Superiority (Rule 23(b)(3))**. Aside from satisfying the prerequisites of Rule 23(a), plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class members, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy. The amount of damages available is insufficient to make litigation addressing Defendant's conduct economically feasible without the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

## COUNT ONE

### (Breach of Contract)

42. Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

43. Tower brings this claim on behalf of himself and members of the Class.

44. Defendant entered into valid Contracts with Plaintiff and members of the Class for provision of air travel in exchange for payment. Their Contracts were drafted by TAP.

45. The agreement between Tower and the Class on the one hand, and TAP on the other, included an exchange of promises and value, *i.e.*, consideration. Here,

8

Tower and the Class gave TAP consideration in the form of money for their fares and all charges and taxes paid.

46. Tower, and all putative Class members performed under the Contract, specifically, by tendering payment to TAP for airline tickets and complying with all conditions precedent, to the extent that any exist, under the Contract.

47. Tower and the Class performed all obligations and conditions required and expected of them.

48. TAP cancelled Tower's and the Class Members' flights.

49. As set forth above and at length in Exhibit A, when a flight is cancelled by TAP, the passenger is entitled to a refund.

50. TAP has failed to provide and/or has outright refused to provide refunds to Tower and the Class for such cancelled flights. TAP did so even though it was contractually obligated to provide refunds to Tower and the Class.

51. As a result of TAP's breaches of the Contract, Tower and the putative Class members have suffered an injury through the payment of money for flights while not receiving services in return.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of the alleged Class, that the Court enter judgment in their favor and against Defendant as follows:

(a) Certifying the proposed Class and appointing Plaintiff and his counsel to represent the class under Rule 23 of the Federal Rules of Civil Procedure;

(b) Requiring Defendant to immediately issue refunds to Plaintiff and members of the Class for the cost of cancelled flights, any cancellation fees, and consequential damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including interest;

9

(c) Awarding compensatory damages, including interest, in an amount to be determined at trial;

(d) Awarding Plaintiff and the Class their reasonable costs and expenses incurred, including counsel fees and litigation expenses, as allowable by law; and

(e) Any other relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable as of right.

Dated: November 23, 2022

Respectfully submitted,

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**

By: *s/      James E. Cecchi*
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Email: decklund@carellabyrne.com

*Attorneys for Plaintiff*

**GLANCY PRONGAY & MURRAY LLP**

Jonathan M. Rotter – *pro hac vice* forthcoming
Raymond Sulentic – *pro hac vice* forthcoming
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: info@glancylaw.com

*Attorneys for Plaintiff*