### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **JON TOWER, On Behalf of Himself and All Others Similarly Situated**,<br><br>                    Plaintiff,<br>    v.<br><br>**TRANSPORTES AEREOS PORTUGUESES, S.A. D/B/A TAP AIR PORTUGAL**,<br><br>                    Defendant. | Case No. 2:22-cv-6746-JKS-SDA<br><br>**OPINION GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>April 22, 2025 |

**STACEY D. ADAMS, United States Magistrate Judge**

Before the Court is a Motion for Preliminary Approval of the Class Action Settlement filed on February 12, 2025 by Plaintiff Jon Tower ("Plaintiff"). (ECF No. 63). Defendant Transportes Aéreos Portugueses, S.A. d/b/a TAP Air Portugal ("Defendant") does not oppose the motion. The parties consented to having this motion decided by the undersigned. (ECF No. 65). The Court heard oral argument on April 7, 2025. For the reasons stated below, the Motion will be **GRANTED**.

### FACTUAL BACKGROUND/RELEVANT PROCEDURAL HISTORY[1]

Plaintiff brings this putative class action on behalf of all persons in the United States who bought tickets on flights operated by Defendant scheduled to depart March 1, 2020 through December 31, 2021(hereinafter, the "Class Period"), whose flights were canceled. (Compl., ECF No. 1 ¶ 7). All of Defendant's passengers were subject to its "Contract of Carriage," which included a promise and warranty to customers that if a flight was canceled or "substantially interrupted,"

---

[1] The Court gleans the following facts from Plaintiff's Complaint filed on November 23, 2022 (Compl.).

1

they were entitled to a full cash refund. (*Id.* ¶¶ 11-12; "Contract," ECF No. 2 ¶ 10.2.1.1). That full refund was to be "equal to 'an amount equal to the fare paid plus, subject to applicable law, the taxes, fees, and charges paid.'" (Compl. ¶ 13; Contract ¶ 10.2.1.1).

The Contract does not include exceptions or limitations based on the reason for the cancellation. (Compl. ¶ 14). Plaintiff contends Defendant's usual practice, prior to the COVID-19 Pandemic (hereinafter, the "Pandemic"), was to refund customers in full for canceled flights. (*Id.* ¶ 15). However, Defendant began cancelling flights *en masse* to protect its profits and/or minimize losses during the Pandemic. (*Id.* ¶ 16). Despite these cancellations, passengers, including Plaintiff, did not receive full refunds. (*Id.* ¶ 19). Instead, contrary to its contractual obligations, Defendant issued a press release on March 19, 2020 notifying customers impacted by flight cancellations that they would receive "a voucher in the same amount paid for the purchase of the ticket, so that they can easily decide where and when they want to travel." (*Id.* ¶ 20). Public reporting revealed many of Defendant's customers struggled to contact it to receive a refund, and Defendant was fined $1,000,000 by the United States Department of Transportation due to its failure to refund fares. (*Id.* ¶¶ 22-25).

Plaintiff purchased a roundtrip ticket from Boston, Massachusetts to Lisbon, Portugal on January 21, 2020 for $2,475.94. (*Id.* ¶ 26). Eight months later, Defendant informed Plaintiff his flight was canceled. (*Id.* ¶ 29). He did not receive a refund. (*Id.* ¶ 30). Plaintiff brings this action, on behalf of himself and others similarly situated, for breach of contract against Defendant for failing to provide refunds in accordance with the Contract. (*Id.* ¶¶ 42-51).

This action commenced on November 23, 2022. (ECF No. 1). Defendant filed a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1),(2),(3), and (6) on January 23, 2023. (ECF Nos. 13-14). In sum, Defendant argued the Complaint should be

dismissed because: (1) it did not involve any case or controversy under Article III of the United States Constitution; (2) the District of New Jersey was an improper venue pursuant to the Contract's forum selection clause; and (3) Plaintiff failed to exhaust his remedies under the alternative dispute resolution process mandated under the Contract. (ECF No. 13-1).

The Honorable Madeline Cox Arleo, U.S.D.J. denied Defendant's Motion to Dismiss on August 22, 2023. (ECF No. 24). She directed the parties to undergo jurisdictional discovery to determine whether this District could exercise jurisdiction over Defendant. (*Id.* at 4). This jurisdictional discovery period concluded on February 29, 2024. (ECF No. 26).

On May 10, 2024, the parties submitted a letter to the Court requesting a stay of the proceedings to attend mediation, which the Court granted on May 14, 2024. (ECF Nos. 48-49). The parties attended mediation with Jed D. Melnick. Esq. on August 1, 2024. ("Attorney Cert.," ECF No. 63-2 ¶ 19). The parties came to a tentative agreement in principle, continued to work together to draft a nonbinding term sheet and conferred to finalize the terms. (*Id.* ¶ 19). The parties signed a term sheet on August 21, 2024. (*Id.* ¶ 20).

## THE SETTLEMENT

The "Settlement Class" is defined as:

> [A]ll ticketholders who are citizens of the United States who purchased with dollars a flight scheduled to depart between March 1, 2020 through December 31, 2021 (a) that [Defendant] canceled; (b) who requested a refund for the ticket as reflected in [Defendant]'s customer care, refund databases, call logs or other information within its possession, custody, or control; (c) did not receive a refund before a claim has been submitted and paid; and (d) who have not used any portion of a flight credit issued in connection with the canceled flight document. For purposes of (a) above, flights that [Defendant] canceled in response to a government order, if any, shall not be excluded.

("Settlement Agreement," ECF No. 63-3 ¶ 58). The settlement excludes: (a) the directors, officers, employees, and attorneys of Defendant and its subsidiaries or any other entity in which Defendant

has a controlling interest; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court. (*See* "Long Form Notice," ECF No. 63-3 Ex. A, at 3). Class members, who properly submit an approved claim form, will receive a 100% cash refund plus 7% interest. (Settlement Agreement ¶ 94). The settlement also states class counsel will request attorneys' fees and costs in the amount of $800,000 and incentive awards of $5,000 each for the class representatives, subject to Court approval. (*Id.* ¶ 67). The fees, costs and monetary awards are payable separate and apart from the 107% cash refund, "thereby ensuring that the Settlement Class Members receive 100% of the direct Settlement Benefits they claim." (*Id.* ¶ 115).

## GOVERNING LAW AND ANALYSIS

### I.  Preliminary Approval of the Class Action Settlement

Approval of a class action settlement is a two-step process: (1) preliminary approval and (2) a subsequent fairness hearing. *Easterday v. USPack Logistics*, No. 15-cv-7559 (RBK) (AMD), 2023 WL 4398491, at *5 (D.N.J. July 6, 2023) (internal citations omitted). At the preliminary approval stage, the parties submit the proposed settlement to the Court for a fairness evaluation. *Id.* If the proposed settlement is preliminarily acceptable, the Court directs the notice to be provided to all class members who would be bound by the settlement for an opportunity to be heard on, object, and opt out. *Id.* (citing Fed. R. Civ. P. 23(c)(2), (e)(1), (e)(5)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Zimmerman v. Zwicker & Assocs., P.C.*, No. 09-cv-3905 (RMB) (JS), 2011 WL 65912, at *2 (D.N.J. Jan. 10, 2011). At this stage, "the court must determine whether the proposed settlement

4

falls "within the range of fairness, reasonableness and adequacy" required by Rule 23(e)." *Easterday*, 2023 WL 4398491, at *2 (quoting *In re Amino Acid Lysine Antitrust Litig.*, No. 95-cv-7679, 1996 WL 197671, at *4 (N.D. Ill. Apr. 22, 1996)).

A proposed settlement falls within the range of possible approval if there is a conceivable basis the standard for final approval would be satisfied. *Id.* (citing *In re Nat'l Football League Players' Concussion Inj. Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014)). Generally, preliminary approval should be granted "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, [and] does not improperly grant preferential treatment to class representatives or segments of the class[.]" *Id.* at 14 (quoting *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). A settlement is presumed fair when it results from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). Preliminary approval is not simply a "rubber stamp" of the agreement. *In re Nat'l Football League Players' Concussion Inj. Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 338 (N.D. Ohio 2001)).

## A.  Requirements for Class Certification Under Fed. R. Civ. P. 23

The parties request that the class be certified for settlement purposes only. (*See* Settlement Agreement ¶ 85; "Br.," ECF No. 63-1 at 29). The Third Circuit has observed that "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *In re Comm. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 799 (3d Cir. 1995) (alterations omitted). "The requirements of [Rule 23] (a) and (b) are designed to ensure that a proposed class has 'sufficient

unity so that absent class members can fairly be bound by decisions of class representatives.'" *In re Prudential Ins. Co.*, 148 F.3d 283, 309 (3d Cir. 1998) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 621 (1997)).

### 1. Fed. R. Civ. P. 23(a) Requirements

The requirements of Rule 23(a) must be met whether certification is sought for the purpose of proceeding with litigation or, as here, for the purpose of proceeding toward settlement. *See Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 379 (3d Cir. 2013). Class certification is appropriate where the prospective class establishes: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); (4) and the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 426 (3d Cir. 2016). All requirements of Fed. R. Civ. P. 23 must be proven by a preponderance of the evidence. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).

#### i.    Numerosity

Generally, the numerosity requirement is satisfied if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)). Fed. R. Civ. P. 23(a) requires an examination of the specific facts in each case. *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980). Here, Plaintiff states that there are "thousands of Settlement Class Members." (Br. at 31). Therefore, the numerosity requirement is easily satisfied.

#### ii.    Commonality

Fed. R. Civ. P. 23(a)(2) "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and their claims must depend on a common contention of such a nature that it is capable of class-wide resolution. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Being capable of class-wide resolution "means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. Here, commonality is easily satisfied, as all class members have suffered the same injury – Defendant did not refund the class members for flight tickets after their flights were canceled due to the Pandemic.

### iii.    Typicality

The typicality requirement "ensures the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *Newton v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 259 F.3d 154, 182-83 (3d Cir. 2001) (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998)). The typicality requirement "does not require that all putative class members share identical claims." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). Instead, "so long as 'the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences.'" *Id*. (internal citations omitted). "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 51 (3d Cir. 1994). The Third Circuit has set a "'low threshold' for typicality," and courts seek to "ensure[] the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Nat'l Football League*, 821 F.3d at 428 (quoting *Newton*, 259 F.3d at 182-83).

7

Here, Plaintiff's claims are typical of those of the Settlement Class because they allege they purchased Defendant's flight tickets, their flights were subsequently canceled and they failed to receive a refund. Further, Plaintiff and potential class members were injured for the same reasons, and their interests are sufficiently aligned, warranting a finding of typicality. *See Levey v. Concesionaria Vuela Compañía de Aviación, S.A.P.I. de C.V.*, No. 20-cv-2215 (JRB), 2024 WL 4906150, at *1 (N.D. Ill. Nov. 4, 2024) (finding the typicality requirement satisfied in a class action against an airline who canceled flights, but did not issue refunds, due to the COVID-19 pandemic).

### iv.    Adequacy of Representation

Class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This fourth factor tests the qualifications of class counsel and representatives, and "aims to root out conflicts of interests within the class to ensure that all class members are fairly represented in the negotiations." *In re Nat'l Football League*, 821 F.3d at 428. Class representatives must represent a class "capably and diligently." *Id.* at 430. A "minimal degree of knowledge" about the litigation is adequate. *Id.* (internal citations omitted).

### a.    Class Representatives

Class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires the Court to assess the qualifications of class counsel and representatives, and also "aims to root out conflicts of interests within the class to ensure that all class members are fairly represented in the negotiations." *In re Nat'l Football League*, 821 F.3d at 428. Class representatives must represent a class "capably and diligently." *Id.* at 430. A "minimal degree of knowledge" about the litigation is adequate. *Id.* (internal citations omitted). The Court must look toward the proposed class representatives to determine whether there is any conflict between their claims and those asserted on behalf of the class, and their ability and incentive to

vigorously represent the interests of the class. *See Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 101 (3d Cir. 2013).

Here Plaintiff proposes to appoint himself and Bianca Vazquez[2] as class representatives (together, "Class Representatives"). They were harmed in the same way as the other class members when they failed to receive a refund for their canceled flights. (Br. at 34). They consulted counsel, collected documents for litigation, and reviewed the pleadings. *Id.* There are no identifiable conflicts between the Class Representative's claims and those of the class at large, and they have ably represented the class as evidenced by this settlement. Accordingly, the Court finds these class representatives to be adequate.

### b. Class Counsel

The Court evaluates class counsel under the Rule 23(g) factors, which include the work counsel has performed in identifying and investigating potential claims; counsel's experience handling class actions, complex litigation, and the types of claims asserted; counsel's knowledge of applicable law; and the resources counsel will commit to the representation. Fed. R. Civ. P. 23(g)(1)(A).

Here, Plaintiff proposes that Carella, Byrne, Cecchi, Brody, & Agnello, P.C. ("Carella Byrne") and Glancy Prongay and Murray LLP ("GPM") (together, "Class Counsel") serve as class counsel. The Court finds Class Counsel to be sufficient. With respect to the Fed. R. Civ. P. 23(g) factors, Class Counsel performed significant work in identifying and investigations the claims, and vigorously prosecuted this action to obtain a favorable settlement for their clients. This included a thorough investigation of the claims before filing the Complaint (Attorney Cert. ¶ 24); a review of

---

[2] Bianca Vazquez is not a named Plaintiff in this action but is nevertheless identified as a class representative. Plaintiff indicated that, if the settlement does not become effective for any reason, he will move to add Vazquez as an additional named plaintiff. (Settlement Agreement ¶ 32 n.2).

Defendant's public security filings (*Id.*); interviewing potential plaintiffs about their experiences (*Id.*); opposing a motion to dismiss (ECF Nos. 15, 24); engaging in jurisdictional discovery that included reviewing a significant number of documents (Attorney Cert. ¶¶ 8-14); filing a motion to compel discovery responses (ECF No. 40); and attending mediation. (Attorney Cert. ¶¶ 19-20).

In terms of experience, several courts in this District have recognized that Carella Bryne and GPM are highly experienced class counsel. *See, e.g., Thomas v. Gerber Prods. Co.*, Nos. 12-cv-835, 12-cv-1098, 12-cv-1149, 12-cv-1283, 12-cv-1878 (JLL), 2012 WL 1606627, at *2 (D.N.J. May 8, 2012) (finding Carella Byrne has "extensive experience in class action litigation dealing with consumer fraud"); *City of Warren Gen. Emps.' Ret. Sys. v. Celgene Corp., Inc.*, No. 18-cv-4772 (JMV) (JBC), 2018 WL 4629570, at *2 (D.N.J. Sept. 26, 2018) (holding Carella Byrne has "substantial experience litigating class actions"); *In re Eros Int'l PLC Sec. Litig.*, No. 19-cv-14125 (ES) (JSA), 2023 WL 8527135, at *2 (D.N.J. Nov. 28, 2023) (finding Carella Byrne and GPM were adequate counsel in securities class action). Class Counsel is well-versed in the applicable law. Accordingly, the Court finds the Fed. R. Civ. P. 23(g) factors to be satisfied.

Next, the Court must weigh three criteria, whether class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the Defendant. *Beltran v. SOS Ltd.*, No. 21-cv-7454 (RBK) (EAP), 2023 WL 319895, at *10 (D.N.J. Jan. 3, 2023) (quoting *In re Gen. Motors Corp.*, 55 F.3d at 801).

The Court has already found that Class Counsel possessed adequate experience and vigorously prosecuted this action in its examination of the Fed. R. Civ. P. 26(g) factors above. Additionally, Class Counsel acted at arm's length from the Defendant, as the parties attended a full day of mediation with an experienced neutral, negotiated a term sheet, and then negotiated the

terms and conditions of the settlement agreement over a five-month period. (Attorney Cert. ¶¶ 19-20, 28). Accordingly, the Court finds Class Counsel to be adequate.

### 2.  Fed. R. Civ. P. 23(b) Requirements

The parties must also demonstrate the proposed class satisfies "at least one of the three requirements listed in Rule 23(b)." *Beltran*, 2023 WL 319895, at *12 (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 345). Here, Plaintiff relies on Fed. R. Civ. P. 23(b)(2), which applies when "questions of law or fact common to class members predominate over any questions affecting only individual members," and when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

### i.  Predominance

The predominance inquiry tests "whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). "Predominance probes whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *McGowan v. CFG Health Network, LLC*, No. 22-cv-2770 (ZNQ) (RLS), 2024 WL 1340329, at *16 (D.N.J. Mar. 28, 2024) (internal citations omitted). "The focus of the predominance inquiry is on liability, not damages." *Smith v. Suprema Specialties*, No. 02-cv-168 (WHW), 2007 WL 1217980, at *9 (D.N.J. Apr. 23, 2007). Here, this requirement is easily satisfied as all class members were harmed by the same conduct by Defendant – which was the failure to refund the cost of their airplane tickets for flights canceled during the Class Period.

### ii.  Superiority

"The superiority requirement asks a district court 'to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan*

*Litig.*, 418 F.3d 277, 309 (3d Cir. 2005) (citing *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996), *aff'd*, 521 U.S. 591, 138 (1997)). Pertinent matters in this inquiry include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]
>
> (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

Here, a class action is a superior method to adjudicate these claims because each individual claim has a relatively low monetary value and there are potentially thousands of settlement class members. When, as here, the certification is for the purpose of settlement, a showing of manageability for trial is not required, and ascertainability looks to whether the class is defined by objective criteria and there is a reliable and feasible method of determining whether class members fall within that definition. *Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 347 (D.N.J. 2020). The class is clearly defined by objective criteria because they all suffered the same injury – Defendant did not refund their airplane tickets when it canceled flights due to the Pandemic. Class members might not be inclined to pursue their claims individually given the relatively small dollar value and the possibility that they might have to arbitrate their claims in Portugal. A class action therefore provides a superior means of obtaining a more efficient recovery for more class members. The Court is satisfied that a class action is the superior method of adjudication in this case.

**B.  Whether the Settlement is Fair, Reasonable, and Adequate under Fed. R. Civ. P. 23(e)**

The Court may only approve the settlement after a hearing and only upon a finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). This includes consideration of whether: the class representatives and counsel have adequately represented the class; the proposal was negotiated at arm's length; the relief provided for the class is adequate; and the proposal treats class members equitably relative to each other. *Id.* In determining whether the relief is adequate, the Court must take into account: the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorney's fees, including timing of payment; and any agreement required to be identified under Rule 23(e)(3). *Id.* In this Circuit, settlements, particularly in the context of large class actions, are favored. *See, e.g.*, *Erheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (recognizing that:

> The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings . . . Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts [and] the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.)

In assessing the reasonableness of the settlement, the Court must be mindful that "[s]ettlements . . . reflect[] negotiated compromises. The role of a district court is not to determine whether the settlement is the fairest possible resolution [but only whether] the compromises reflected in the settlement . . . are fair, reasonable and adequate when considered from the perspective of the class as a whole." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013) (citation omitted); *see also Skeen v. BMW of N. Am., LLC*, No. 13-cv-1531 (WHW) (CLW), 2016 WL 4033969, at *7 (D.N.J. July 26, 2016). "While the issue of final settlement

approval is not presently before the Court, it is important to consider the final approval factors during this stage so as to identify any potential issues that could impede the offer's completion." *Singleton v. First Student Mgmt. LLC*, No. 13-cv-1744 (JEI) (JS), 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014).

To review the settlement, courts in this circuit analyze the settlement using nine factors from *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), as well as the permissive and non-exhaustive factors from *In Re Prudential Ins. Co.*, 148 F.3d at 323. The *Girsh* Factors include:

(1) the complexity, expense and likely duration of the litigation;
(2) the reaction of the class to the settlement;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the risks of establishing liability;
(5) the risks of establishing damages;
(6) the risks of maintaining the class action through the trial;
(7) the ability of the defendants to withstand a greater judgment;
(8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157. It is the settling parties' burden to demonstrate that the *Girsh* factors weigh in favor of approving the settlement. *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) (citations omitted).

### 1. The Complexity, Expense, and Likely Duration of Litigation (Factor #1)

The first *Girsh* factor, the complexity, expense, and likely duration of litigation, favors approval. This factor considers "the probable costs, in both time and money, of continued litigation." *In re Gen. Motors*, 55 F.3d at 812 (quoting *Bryan v. Pittsburgh Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974)). Settlement is favored under this factor if litigation is expected to be complex, expensive and time consuming." *Yedlowski v. Roka Bioscience*, No. 14-cv-8020 (FLW)

(TJB), 2016 WL 6661336, at *12 (D.N.J. Nov. 10, 2016) (quoting *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-cv-374 (JAP), 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008)).

This matter has proceeded for almost three years with a dispositive motion, extensive jurisdictional discovery and an investigation into the allegations. (Attorney Cert. ¶¶ 24-25). Defendant had the right to renew its motion to dismiss following the completion of jurisdictional discovery, which always carries risk. (ECF No. 24 at 6) ("Defendant may again renew their objections following jurisdictional discovery"). If Plaintiff survived the motion, continued litigation would involve lengthy and expensive formal fact discovery around the country and likely in Portugal. At the conclusion of discovery, Plaintiff would face dispositive motions. Plaintiff would also face a challenged motion for class certification. If the claims were not disposed at any of these junctures in the litigation, trial would be lengthy, and the outcome is never guaranteed. Then, there would be the inevitable appeals, further prolonging the action. It could be years before Plaintiff, and therefore the class, received any recovery. Providing settlement class members with a certain result now weighs in favor of preliminary approval. The Court therefore finds that the first *Girsh* factor is met.

### 2. The reaction of the class to the settlement (Factor #2)

At this preliminary approval stage, it is impossible to know the reaction of the class to the settlement. The class representatives support the settlement. Class members will receive notice and will be afforded the opportunity to object or opt out. This factor is, at best, neutral.

### 3. The stage of the proceedings and the amount of discovery to be completed (Factor #3)

"This factor considers the degree of case development accomplished by counsel prior to settlement." *Bredbenner v. Liberty Travel, Inc.*, Nos. 09-cv-905, 09-cv-1248, 09-cv-4587 (MF), 2011 WL 1344745, at *12 (D.N.J. Apr. 8, 2011). Here, this litigation has been ongoing for three

years and class counsel has done a significant amount of work to develop the claims. Class Counsel did an independent investigation of the claims, reviewed documents and interviewed putative class members. Plaintiff opposed and survived a motion to dismiss. The parties engaged in significant jurisdictional discovery involving thousands of documents. (Settlement Agreement ¶¶ 14, 69). Courts have found this factor to be satisfied under similar circumstances. *See Saini v. BMW of N. Am., LLC*, No. 12-cv-6105 (CCC), 2015 WL 2448846, at *10 (D.N.J. May 21, 2015) (finding the third *Girsh* factor met when the case had been litigated for two years, the parties had engaged in motion-to-dismiss briefing, and a settlement was reached through mediation).

Counsel fully appreciated the merits and liabilities of the case prior to entering into settlement. Mr. Melnick, the mediator in this case, has mediated several class action cases in the District of New Jersey, which led to successful settlements approved by the Court.[3] This factor weighs in favor of preliminary approval.

### 4. The risks of establishing liability and damages (Factors #4 and #5)

"Courts commonly analyze the fourth and fifth *Girsh* factors together." *Beltran*, 2023 WL 319895, at *5 (internal citations omitted). These factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *In re Warfarian Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). This inquiry "requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 89 (D.N.J. 2001) (quoting *In re Prudential Ins. Co.*, 148 F.3d at 319).

---

[3] *See In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*, No. 16-cv-3087 (MAS) (LHG), 2022 WL 525807, at *2 (D.N.J. Feb. 22, 2022); *In re Par Pharm. Sec. Litig.*, No. 06-cv-3226 (ES), 2013 WL 3930091, at *2 (D.N.J. Jul. 29, 2013); *Vitiello v. Bed Bath & Beyond Inc.*, No. 20-cv-4240 (MCA) (MAH), 2022 WL 21305086, at *2 (D.N.J. Jun. 3, 2022) (approving class action settlement Mr. Melnick mediated, calling Mr. Melnick "a respected and experienced mediator").

While Plaintiff is confident of the claims in this matter, he recognizes that litigation is not without risk. Plaintiff, after completion of jurisdictional discovery, would face another motion to dismiss for improper venue. If Plaintiff failed to survive this motion, the case would be dismissed. Further, Plaintiff faced the risk of being forced to arbitrate the claims in Portugal pursuant to the Contract. This could involve significant travel, interpreters and translation of documents in another language. Further, Defendant continues to deny liability. (Settlement Agreement ¶¶ 20, 126). In litigation, nothing is ever certain. The settlement eliminates this risk and avoids further delay. Therefore, this factor weighs in favor of preliminary approval.

### 5.  The Risks of Maintaining the Class Action Through Trial (Factor #6)

This factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarian*, 391 F.3d at 538. As stated in *In re Gen. Motors*:

> The value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits. Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action.

55 F.3d at 817.The Third Circuit has acknowledged this exercise is somewhat "perfunctory" because district courts retain the discretion to decertify or modify a class that becomes unmanageable. *In re Rent-Way Secs. Litig.*, 305 F. Supp. 2d 491, 506 (W.D. Pa. 2003). If this matter did not settle, Defendant would likely challenge certification, as this class consists of nationwide passengers who may have formed their contracts under different states' and countries' laws. (Br. at 23). There are inherent risks to maintaining a class throughout trial. *In re Par Pharm.*, 2013 WL 3930091, at *7. Accordingly, this factor weighs in favor of settlement.

### 6. The ability of Defendants to withstand a greater judgment (Factor #7)

This factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant Corp.*, 264 F.3d 201, 240 (3d Cir. 2001). The Court has little doubt that an entity of Defendant's size could withstand a larger judgment, but – as has repeatedly been recognized within this District under similar circumstances – the relative financial resources of a defendant do not themselves render a settlement unreasonable. *See, e.g.*, *Oliver v. BMW of N.A., LLC*, No. 17-cv-12979 (CCC) (MF), 2021 WL 870662, at *8 (D.N.J. Mar. 8, 2021); *Yaeger v. Subaru of Am., Inc.*, No. 14-cv-04490 (JBS) (KMW), 2016 WL 4541861, at *11 (D.N.J. Aug. 31, 2016). "[T]he fact that [defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached." *Warfarin*, 391 F.3d at 538. Further, this factor is less significant here, where the class is expected to receive a full refund *plus* interest. This factor therefore weighs in favor of preliminary approval.

### 7. The range of reasonableness of the settlement in light of the best possible recovery and all the attendant risks of litigation (Factors #8 and #9)

Here, there is no question that the settlement is reasonable, because the class is receiving a full recovery. Class members who properly submit a claim will receive a full refund plus 7% interest. (Settlement Agreement ¶ 94). This is effectively the best result Plaintiff could expect to if he prevailed at trial. *See Beneli v. BCA Fin. Servs. Inc.*, 324. F.R.D. 89, 105 (D.N.J. 2018) (finding this factor weighed in settlement when settlement provided "at or near the statutory cap" of maximum damages). Accordingly, this factor weighs in favor of preliminary approval.

### 8.    The *Prudential* Considerations

Since *Girsch*, the Third Circuit has held that, because of the "sea-change in the nature of class actions," it may be helpful to expand the *Girsch* factors to include permissive and non-exhaustive factors, including:

> [1] [T]he maturity of the underlying substantive issues . . . ; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved — or likely to be achieved — for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In Re Pet Food Prods.*, 629 F.3d at 350 (quoting *In Re Prudential Ins. Co.*, 148 F.3d at 323). *See In re Baby Prods.*, 708 F.3d at 174 ("Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential. They are permissive and non-exhaustive, 'illustrat[ing] . . . [the] additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms.'") (internal citations omitted). "The Court does not have to perform analysis on each *Prudential* factor – rather it must address the factors that are relevant to the particular case at hand." *Castro v. Sanofi Pasteur, Inc.*, No. 11-cv-7178 (MCA), 2017 WL 4776626, at *6 (D.N.J. Oct. 20, 2017). There are three factors relevant at this time – whether class members are afforded the right to opt out, the reasonableness of the proposed attorneys' fees award, and the whether the procedure for processing claims is fair and reasonable.

First, Class members are able to opt-out if they so choose. (*See* Settlement Agreement ¶ 89). Second, the proposed attorney fees and costs are $800,000, plus $$5,000 each for the two Class Representatives. (*Id.* ¶¶ 67(d), 54, 67(c)). The fees, costs, and awards are paid separate and

apart from the refunds to class members – meaning their refund will not be reduced by the requested fee. (*Id.* ¶ 67(d)). At this preliminary stage, and given the fact that Plaintiff contends there are "thousands" of class members, (Br. at 31), the Court finds the requested fees and costs to be reasonable. *See Silvis v. Ambit Energy L.P.*, 326 F.R.D. 419, 436 (E.D. Pa. 2018) (finding $1,450,000 in fees and costs to be reasonable where counsel recovered $9,300,000, a third of the full potential recovery, with 12,542 claims received); *Sanofi Pasteur*, 2017 WL 4776626, at *7 (finding this factor satisfied where class counsel requested one-third of the settlement amount in fees); *Yedlowski*, 2016 WL 6661336, at *17 (same). While the Court does not have a motion for attorneys' fees before it at this time, the fact that the attorneys' fees and costs are not be funded out of the settlement monies weighs in favor of settlement. *See Beneli*, 324 F.R.D. at 110 ("Given that Class Counsel here has obtained such a large recovery here, and seeks fees separate and apart from the settlement fund, Class Counsel's fee request is imminently reasonable."). The reasonableness of the requested attorney fee award and costs will be further scrutinized at the final fairness hearing, where the Court will have before it a Motion for Final Approval of the Class Action Settlement and a Motion for Attorneys' Fees and Costs. Accordingly, the Court finds the proposed fees to be reasonable at this time.

Finally, the procedure for processing individual claims is fair and reasonable because the Court appoints Epiq Systems, LLC ("Epiq") to serve as the settlement administrator, whose qualifications are to be discussed *infra*.

### C.  The Proposed Notice Plan

Finally, the Court will turn to the proposed notice plan. The Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." *Easterday*, 2023 WL 4398491, at *5 (quoting Fed. R. Civ. P. 23(e)(1)). Class notice is subject to due process

requirements and must comply with the method and content guidelines in Fed. R. Civ. P. 23(c)(2)

and 23(e)(1). *Id.* In a Rule 23(b)(3) class action, "the court must direct to class members the best

notice that is practicable under the circumstances, including individual notice to all members who

can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). When the settlement

notice is sent simultaneously with the notice, the notice must inform class the settlement agreement

is not a "fait accompli" and that class members can be heard, object to the settlement, and opt out.

*Easterday*, 2023 WL 4398491, at *5 (citing *In re Gen. Motors*, 55 F.3d at 789). The notices must

"clearly and concisely state in plain, easily understood language":

1.  the nature of the action;
2.  the definition of the class certified;
3.  the class claims, issues, or defenses;
4.  that a class member may enter an appearance through an attorney if the member so desires;
5.  that the court will exclude from the class any member who requests exclusion;
6.  the time and manner for requesting exclusion; and
7.  the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Due process requires notification to the class "(1) of the nature of the pending litigation,

(2) of the settlement's general terms, (3) that complete information is available from the court files,

and (4) that any class member may appear and be heard at the Fairness Hearing." *Easterday*, 2023

WL 4398491, at *6 (quoting *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 962 F. Supp. 450,

527 (D.N.J. 1997)). The notice must "describe, in detail, the nature of the proposed settlement, the

circumstances justifying it, and the consequences of accepting and opting out of it." *Id.* at 527

(quoting *In re Diet Drugs*, 369 F.3d 293, 308-10 (3d Cir. 2004)).

Here, notice to the class will consist of: (a) a Long Form Class Notice made available on

the claims' administration website; (b) a postcard notice; and (c) an email notice. (Attorney Cert.

¶ 33). Putative class members will be identified by Defendant using purchase history information that includes contact information for affected passengers. (*Id.* ¶ 35).

The Court finds Long Form Notice is sufficient.[4] It explains the nature of the action, including that it is an action about whether Defendant violated its contract with its customers by failing to refund customers for flights canceled during the Pandemic. (*See* Long Form Notice at 3). It explains that the settlement class is all individuals who purchased airline tickets from Defendant between January 1, 2020 and December 31, 2021, whose flights were canceled and who did not receive refunds or some other type of credit. (*Id.*). It explains that a class member can hire their own attorney if they wish. (*Id.* at 5). It states class members can exclude themselves from the settlement and explains the ramifications of doing so. (*Id.*). It sets forth a due date to request exclusion. (*Id.*). It states class counsel will seek an award of attorneys' fees and expenses of up to $800,000 and asks the Court to approve a $5,000 incentive award to each of the two class representatives. (*Id.*). It explains that a class member can object to the settlement even if they submit a claim, and explains how to properly submit an objection. (*Id.*). Finally, it explains that if a class member does not opt out of the class, they are giving up the right to independently sue Defendant. (*Id.*). The Notice also explains the general terms of the settlement – namely, that a class member is entitled to receive a full refund if they opt-in to the settlement.

Plaintiff requests that the Court appoint Epiq as settlement administrator (Settlement Agreement ¶ 70). Several courts in this District have found Epiq to be a sufficient claims

---

[4] The Court requests Plaintiff correct two minor typographical errors in the long form notice. First, in listing Magistrate Judge Adams' full name, Stacey should be spelled with an "e". Second, the docket number should be reflected to end in "JKS-SDA" rather than "JKS-ESK."

administrator.[5] The Court is satisfied with the role Epiq will serve in the instant case, which includes: distributing the notice using the class list provided by Defendant, responding to class member inquiries, processing opt-out requests, providing weekly reports to class counsel and Defendant, and preparing an affidavit for the Final Approval Hearing. (*See* Settlement Agreement ¶¶ 70-73). Epiq will undergo the following methods for providing notice to the class:

> **For those in which Epiq has postal address and email:** Epiq will send a postcard notice via mail and two reminder email notices if a class member does not submit a claim form by a specified date. (*Id.* ¶ 72(d)). If the postcard notice is returned as undeliverable, Epiq will attempt to obtain an alternative postcard address. (*Id.*)

> **For those in which Epiq only has an email:** Epiq will send an initial email notice and up to two reminder email notices if the class member does not submit a Claim Form as of the date the reminder Email Notices are scheduled to be sent out. (*Id.* ¶ 72(b)). If the same email address is provided for more than one member of the class, Epiq will send separate email notice identifying the ticketholder so each class member receives a separate notice. (*Id.*).

> **For those in which Epiq only has a postal address:** Epiq will send a postcard notice via U.S. Mail and a reminder Postcard Notice for those who have not submitted a Claim Form as of the date reminder Postcard Notices are scheduled to be sent. (*Id.* ¶ 72(c)).

Epiq will also create a website which will provide the deadlines for submitting a claim form, the dates of the proceedings, a toll-free number to provide class members with information regarding the settlement, and copies of the Settlement Agreement, claim form, and relevant court orders. (*Id.* ¶¶ 87-88).

---

[5] *See Kress v. Fulton Bank, N.A.*, No. 19-cv-18985 (CDJ) (MJS), 2021 WL 9031639, at *15 (D.N.J. Sept. 17, 2021); *Fernandez v. Knight Cap. Grp., Inc.*, No. 12-cv-6760 (MCA) (LDW), 2016 WL 7468089, at *1 (D.N.J. June 16, 2016); *In re Caterpillar, Inc.*, No. 14-cv-3722 (JBS) (JS), 2016 WL 7130935, at *3 (D.N.J. May 25, 2016); *In re Ocean Power Techs., Inc., Sec. Litig.*, No. 14-cv-3799 (FLW) (LHG), 2016 WL 7638464, at *2 (D.N.J. June 7, 2016).

The Court is therefore satisfied with the Proposed Notice Plan, finding that it satisfies due process and attempts to reach as many class members as possible. *See Udeen v. Subaru of Am.*, No. 18-cv-17334 (RBK) (JS), 2019 WL 4894568, at *7 (D.N.J. Oct. 4, 2019) (approving a similar notice plan). Accordingly, the Court hereby appoints Epiq as the settlement administrator in the instant case. Finally, the Court approves the proposed schedule, finding it allows enough time for Epiq to send notices to the class and process claims forms, and for class members to opt-out and submit their objections.

## CONCLUSION

For the foregoing reasons, the Motion for Preliminary Approval of the Class Action Settlement is **GRANTED**. An accompanying Order follows.

  */s/ Stacey D. Adams*
Hon. Stacey D. Adams
United States Magistrate Judge